IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-00189

| | | |
|---|---|---|
| The Cincinnati Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| Wayne Hunt; Levi Owens, as Personal | ) | **(Declaratory Judgment)** |
| Representative for the Estate of Christopher | ) | |
| McLean; Maisha Jacobs; and Wilmington | ) | **Non-Jury Trial Demanded** |
| Shipping Company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Plaintiff, complaining of the Defendants above-named, would respectfully allege and show unto this Honorable Court as follows:

**PRELIMINARY STATEMENT**

1.      This action is brought pursuant to the Federal Uniform Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and the North Carolina Uniform Declaratory Judgment Act,  N.C. Gen. Stat. § 1-253, *et. seq*.

2.      The Cincinnati Insurance Company ("CIC") respectfully requests a declaratory judgment that CIC does not owe a duty to defend or indemnify Wayne Hunt ("Hunt"), under a primary policy of insurance, bearing Policy Number EBA0104045, and an excess coverage liability policy of insurance, bearing Policy Number ENP0104045, both issued by CIC to Wilmington Shipping Company ("WSC"), related to a default judgment entered against Hunt in Civil Action File No. 2016-CP-34-00265, entitled  *Levi Owens as Personal Representative of the Estate of Christopher McLean, Plaintiff v. Wayne Hunt, Defendant,* pending in the Court of Common Pleas of the State of South Carolina, County of Marlboro (the "Wrongful Death Action"),

or a default judgment entered against Hunt in Civil Action File No. 2016-CP-34-00264, entitled *Maisha Jacobs, Plaintiff v. Wayne Hunt, Defendant*, pending in the Court of Common Pleas for the State of South Carolina, County of Marlboro (the "Personal Injury Action").

## PARTIES AND JURISDICTION

3.      Plaintiff CIC is an Ohio corporation, with its principal place of business located at 6200 S. Gilmore Road, Fairfield, OH 45014-5141. CIC is an insurance company.

4.      Upon information and belief, Defendant Hunt is currently a citizen and resident of Orangeburg County, South Carolina; however, at the time of the incident which gave rise to the Wrongful Death Action, Hunt was a citizen and resident of Pender County, North Carolina.

5.      Upon information and belief, Levi Owens ("Owens"), is a citizen and resident of Marlboro County, South Carolina, with a residence in Bennettsville, South Carolina.

6.      Owens has been appointed by the Marlboro County Probate Court to act as Personal Representative for the Estate of Christopher McLean.

7.      At all times relevant hereto, Christopher McLean was a citizen and resident of the State of South Carolina.

8.      Upon information and belief, Maisha Jacobs ("Jacobs") is a citizen and resident of Marlboro County, South Carolina.

9.      Defendant Wilmington Shipping Company ("WSC") is a North Carolina corporation, with a principal place of business at 330 Shipyard Blvd., Wilmington, New Hannover County, North Carolina 28412.

10.      At all times relevant hereto, WSC was doing business in North Carolina.

11.      Owens has obtained a default judgment against Hunt in the amount of $5,100,000 in the Wrongful Death Action in the Court of Common Pleas for Marlboro County, South Carolina, which is potentially subject to coverage under the Policy.

2

12.     Jacobs has obtained a default judgment against Hunt in the amount of $110,000 in the Personal Injury Action in the Court of Common Pleas for Marlboro County, South Carolina, which is potentially subject to coverage under the Policy.

13.     There is complete diversity between CIC and the Defendants in this action.

14.     The amount in controversy exceeds $75,000, exclusive of interest and costs, and this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

15.     Venue is appropriate in the Eastern District of North Carolina, and the Southern Division, pursuant to 28 U.S.C. § 1391, because WSC's principal place of business is in New Hanover County, and the insurance policies at issue were issued in New Hanover County to WSC, both of which are in the Southern Division of the Eastern District of North Carolina.  Further, all efforts at service upon Hunt, which are the central issue in this case, occurred in North Carolina. The issuance of the insurance policies to a North Carolina entity in North Carolina, combined with the purported service upon the party in default in North Carolina, means that both a substantial part of the events giving rise to this action and a substantial part of the property that is the subject of the action is situated in North Carolina.

16.     CIC issued two policies of insurance, bearing policy numbers EBA0104045 (the "Business Auto Policy") and ENP0104045 (the "Excess Coverage Liability Policy"), to Wilmington Shipping Company (the Business Auto Policy and Excess Coverage Liability Policy are from time to time hereafter reference collectively as "the Policies") on or around October 1, 2013.  A copy of the Business Auto Policy is attached hereto as Exhibit A and a copy of the Excess Coverage Liability Policy is attached hereto as Exhibit B, and both of the Policies incorporated herein as if set forth fully.

17.     This Court has jurisdiction over the parties and subject matter of the action, and this District Court is the proper venue for this action.

## FACTUAL ALLEGATIONS

18.　CIC issued the Policies to WSC on or around October 1, 2013.

19.　The Policies provided certain insurance coverages related to motor vehicles owned, leased and/or operated by or on behalf of WSC, under a Business Auto Coverage Form.

20.　The Business Auto Policy stated that the class of persons and entities defined as "insureds" under the Business Auto Policy includes WSC and "[a]nyone else [other than WSC] while using with [WSC's] permission a covered "auto" [WSC] own[s], hire[s] or borrow[s]." (Exhibit A, Section II(A)(1)(b).)

21.　The Business Auto Policy included in its Conditions duties imposed on any insured in the event of a suit, stating:

**2.　Duties in the Event of Accident, Claim, Suit or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.**　In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or loss occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.**　Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)**　Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

4

> **(4)** Authorize us to obtain medical records or other pertinent information.
>
> **(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

(Exhibit A, Section IV(A)(2).)

22.    The Excess Coverage Liability Policy incorporates the "terms, definitions, conditions, limitations and exclusions of the [Business Auto Policy] . . ., except for terms and conditions related to duties to investigate or defend, the limits of insurance, the payment of expenses, the premium, cancellation or non-renewal, the policy period, or other provisions inconsistent with the Excess Coverage Liability Policy.  (Exhibit B, Section I(5).)

23.    The Excess Coverage Liability Policy included in its Conditions duties imposed on any insured in the event of a suit, stating:

> ### 4.   Duties in the Event of Occurrence, Claim or Suit
>
> **a.**   You must see to it that we and your underlying insurers are notified as soon as practicable of any occurrence which may result in a claim if the claim may involve this Coverage Part or any "underlying insurance". Notice should include:
>
> > **(1)**   How, when and where the occurrence took place;
> >
> > **(2)**   The names and addresses of injured persons and witnesses;
> >
> > **(3)**   The nature and location of any injury or damage arising out of the occurrence.
>
> **b.**   If a claim is made or suit is brought against any "insured" that is likely to involve this Coverage Part or any "underlying insurance", you must notify us and your underlying insurers as soon as practicable.
>
> **c.**   You must see to it that we and your underlying insurers:
>
> > **(1)**   Are assisted, upon our request, in the enforcement of any right against any person or organization which may be liable to any "insured" because of injury or damage to which this insurance may apply; and
> >
> > **(2)**   Receive the "insured's" cooperation in the investigation, settlement or defense of the claim or suit.

**d.** No "insured", except at their own expense, will voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent.

(Exhibit B, Section III(4).)

24.     On or around December 10, 2013, Hunt was involved in a motor vehicle accident (the "Accident") at the intersection of US Highway 15 and SEC-438 in Marlboro County, South Carolina, with a vehicle driven by Jacobs in which Christopher McLean rode as a passenger.

25.     Upon information and belief, McLean died as a result of injuries that he suffered in the Accident.

26.     At the time of the Accident, Hunt was working as an employee of WSC, driving a truck which WSC leased from Penske Truck Leasing Co., Ltd., under a written lease agreement with Penske Truck Leasing Co., Ltd.

27.     Upon information and belief, Owens will seek coverage under the Policies for damages recovered in the Wrongful Death Action.

28.     Jacobs has demanded coverage under the Policies for damages recovered in the Personal Injury Action.

29.     On or around December 8, 2016, Owens filed a Summons and Complaint the Wrongful Death Action with the Marlboro County Court of Common Pleas, alleging that Hunt was liable to Owens for damages as a result of the bodily injury and death suffered by Christopher McLean in the Accident.  A copy of the filed Summons and Complaint in the Owens Action is filed as Exhibit C hereto, and it is incorporated herein by reference.

30.     According to an Affidavit filed with the Marlboro County Clerk of Court, Plaintiff effected service of the Wrongful Death Action Summons and Complaint through the South Carolina Department of Motor Vehicles ("SCDMV") on February 10, 2017.  A copy of the affidavit of Wanda R. Ealy of SCDMV regarding service is attached as Exhibit D hereto, and it is incorporated herein by reference.

6

31.     In her Affidavit, Wanda Ealy states that SCDMV first attempted service of the Owens Action Summons and Complaint via Certified Mail, which was returned to sender.  Early further avers that SCDMV then mailed the Wrongful Death Action Summons and Complaint by open mail.  (Exhibit D.)

32.     Although CIC presently has no evidence that Hunt received actual notice of the Summons and Complaint, CIC never received notice of the Wrongful Death Action Summons and Complaint.

33.     On November 16, 2017, Owens filed an Affidavit of Default in the Wrongful Death Action with the Marlboro County Clerk of Court.  A copy of the Affidavit of Default in the Wrongful Death Action is filed herewith as Exhibit E, and it is incorporated herein by reference.

34.     Although CIC presently has no evidence that Hunt received actual notice of the Affidavit of Default in the Wrongful Death Action, CIC never received notice of the Affidavit of Default in the Wrongful Death Action.

35.     Also on November 16, 2017, the Marlboro Clerk of Court filed an Entry of Default in the Wrongful Death Action executed by Judge Paul M. Burch, which is filed herewith as Exhibit F, and it is incorporated herein by reference.

36.     Although CIC presently has no evidence that Hunt received actual notice of the Entry of Default in the Wrongful Death Action, CIC never received notice of the Entry of Default in the Wrongful Death Action.

37.     The Entry of Default in the Wrongful Death Action stated "[i]t appears from the Affidavit of Default and other evidence presented by counsel for plaintiff, that a Summons and Complaint were properly served upon the defendant, Wayne Hunt on February 10, 2017 and that more than 30 days have elapsed an no timely answer has been made by the defendant."  (Exhibit F.)

38.     On October 22, 2018, Judge Paul M. Burch filed an Order of Reference, which referred the Wrongful Death Action to Douglas Jennings, Jr., for Jennings to take testimony and determine the amount of damages, and all motions filed after the order were required to be filed with the Special Referee.  A copy of the Order of Reference for the Wrongful Death Action is filed herewith as Exhibit G, and it is incorporated herein by reference.

39.     Although CIC presently has no evidence that Hunt received actual notice of the Order of Reference for the Wrongful Death Action, CIC never received notice of the Order of Reference for the Wrongful Death Action.

40.     On November 4, 2021, Owens' counsel filed a Notice of Hearing in the Wrongful Death Action, which is attached hereto as Exhibit H.

41.     The Notice of Hearing included an Affidavit of Service which stated that the Notice of Hearing for the Wrongful Death Action was mailed to Hunt's last known address.  (Exhibit H.)

42.     Although CIC presently has no evidence that Hunt received actual notice of the Notice of Hearing in the Wrongful Death Action, CIC never received Notice of Hearing, nor was CIC ever notified that a damages hearing was scheduled to occur.

43.     On November 17, 2021, Special Referee Douglas Jennings, Jr., conducted a damages hearing in the Wrongful Death Action.

44.     On November 18, 2021, the Special Referee filed an Order Awarding Default Judgment in the Wrongful Death Action, which is attached hereto as Exhibit I, and which is incorporated herein by reference.

45.     Although CIC presently has no evidence that Hunt received actual notice of the Order Awarding Default Judgment in the Wrongful Death Action, CIC did not receive notice of the Order Awarding Default Judgment, until recently.

46.     Recently, CIC learned of the Default Judgment in the Wrongful Death Action against Hunt, from someone other than Hunt.

47.     In response to receiving such notice, CIC issued a Reservation of Rights, and it undertook defense of Hunt, pursuant to that Reservation of Rights.

48.     To-date, Hunt remains subject to the Default Judgment entered in the Wrongful Death Action.

49.     On or around December 8, 2016, Jacobs filed a Summons and Complaint in the Personal Injury Action with the Marlboro County Court of Common Pleas, alleging that Hunt was liable to Jacobs for damages as a result of the bodily injury and death suffered by Jacobs in the Accident.  A copy of the filed Summons and Complaint in the Personal Injury Action is filed as Exhibit J hereto, and it is incorporated herein by reference.

50.     According to a letter filed with the Marlboro County Clerk of Court, Jacobs effected service of the Personal Injury Action Summons and Complaint through the South Carolina Department of Motor Vehicles ("SCDMV") on February 10, 2017.  A copy of the letter of Wanda R. Ealy of SCDMV regarding service is attached as Exhibit K hereto, and it is incorporated herein by reference.

51.     Although CIC presently has no evidence that Hunt received actual notice of the Personal Injury Action Summons and Complaint, CIC never received notice of the Personal Injury Action Summons and Complaint.

52.     On November 16, 2017, Jacobs filed an Affidavit of Default in the Personal Injury Action with the Marlboro County Clerk of Court.  A copy of the Affidavit of Default in the Personal Injury Action is filed herewith as Exhibit L, and it is incorporated herein by reference.

53.     Although CIC presently has no evidence that Hunt received actual notice of the Affidavit of Default in the Personal Injury Action, CIC never received notice of the Affidavit of Default in the Personal Injury Action.

54.     Also on November 16, 2017, the Marlboro Clerk of Court filed an Entry of Default in the Personal Injury Action executed by Judge Paul M. Burch, which is filed herewith as Exhibit M, and it is incorporated herein by reference.

55.     Although CIC presently has no evidence that Hunt received actual notice of the Entry of Default in the Personal Injury Action, CIC never received notice of the Entry of Default in the Personal Injury Action.

56.     The Entry of Default in the Personal Injury Action stated "[i]t appears from the Affidavit of Default and other evidence presented by counsel for plaintiff, that a Summons and Complaint were properly served upon the defendant, Wayne Hunt on February 10, 2017 and that more than 30 days have elapsed an no timely answer has been made by the defendant." (Exhibit M.)

57.     On October 22, 2018, Judge Paul M. Burch filed an Order of Reference, which referred the Personal Injury Action to Douglas Jennings, Jr., for Jennings to take testimony and determine the amount of damages, and all motions filed after the order were required to be filed with the Special Referee.  A copy of the Order of Reference for the Personal Injury Action is filed herewith as Exhibit N, and it is incorporated herein by reference.

58.     Although CIC presently has no evidence that Hunt received actual notice of the Order of Reference for the Personal Injury Action, CIC never received notice of the Order of Reference for the Personal Injury Action.

59.     The Marlboro Clerk of Court's file does not indicate that Jacobs filed a Notice of Hearing for the Personal Injury Action.

60.     Although CIC presently has no evidence that Hunt received actual notice of the Notice of Hearing in the Personal Injury Action, CIC never received Notice of Hearing for the Personal Injury Action, nor was CIC ever notified that a damages hearing was scheduled to occur.

61.     On February 21, 2022, Special Referee Douglas Jennings, Jr., conducted a damages hearing in the Personal Injury Action.

62.     On March 23, 2022, the Special Referee filed an Order Awarding Default Judgment in the Personal Injury Action, which is attached hereto as Exhibit O, and which is incorporated herein by reference.

63.     Although CIC presently has no evidence that Hunt received actual notice of the Order Awarding Default Judgment in the Personal Injury Action, CIC did not receive notice of the Order Awarding Default Judgment, until recently.

64.     Recently, CIC learned of the Default Judgment in the Personal Injury Action against Hunt, from someone other than Hunt.

65.     In response to receiving such notice, CIC issued a Reservation of Rights, and it undertook defense of Hunt, pursuant to that Reservation of Rights.

66.     To-date, Hunt remains subject to the Default Judgment entered in the Personal Injury Action.

**FIRST CAUSE OF ACTION**

**(Declaratory Judgment)**

67.     CIC incorporates its allegations of Paragraphs 1 through 66, to the extent consistent herewith.

68.     In the Wrongful Death Action Complaint, Owens alleges that Hunt acted negligently, causing McLean's death.  (Exhibit C.)

69.     In the Order Awarding Default Judgment in the Wrongful Death Action, the Special Referee found that Hunt acted negligently and caused damages to Owens, and the Special Referee awarded $5,000,000 in wrongful death damages and $100,000 in survival damages.  (Exhibit I.)

70.     The Special Referee entered a Default Judgment against Hunt in the Wrongful Death Action before CIC ever received notice of the Wrongful Death Action.

71.     In the Personal Injury Action Complaint, Jacobs alleges that Hunt acted negligently or recklessly causing Jacobs' injuries.  (Exhibit J.)

72.     The Special Referee entered a Default Judgment against Hunt in the Personal Injury Action before CIC ever received notice of the Personal Injury Action.

73.     Both of the Policies required Hunt to immediately send CIC copies of any summons or legal paper received regarding any "suit," as defined under the Policy.  (*See* Exhibit A, Section IV(A)(2)(b); *see also* Exhibit B, Excess Liability Coverage Policy, Section III(4).)

74.     Over five years ran from service of the Wrongful Death Action Summons and Complaint via SCDMV without CIC ever receiving notice of the Wrongful Death Action. Accordingly, CIC never received timely notice of a claim or suit, in violation of the Conditions of the Policies.

75.     Over five years ran from service of the Personal Injury Action Summons and Complaint via SCDMV without CIC ever receiving notice of the Personal Injury Action. Accordingly, CIC never received timely notice of a claim or suit, in violation of the Conditions of the Policies.

76.     Based on present information, CIC is unaware of whether Hunt has a good faith reason for failing to provide timely notice to CIC of the Wrongful Death Action, the Personal Injury Action, or related claims.

77. Regardless of whether Hunt had a good faith reason for failing to timely provide CIC with notice of the Wrongful Death Action and/or the Personal Injury Action, CIC has suffered material prejudice to its ability to investigate and defend the Wrongful Death Action and the Personal Injury Action, in the form of two Default Judgments entered against Hunt.

78. Based upon the material prejudice to CIC's abilities to investigate or defend Hunt under the Policies, as well as Hunt's failure to comply with a material condition of the Policies, regardless of whether he received actual notice of the Wrongful Death Action or the Personal Injury Action, CIC has no duty to defend or indemnify Hunt under the Policies for the Wrongful Death Action or the Personal Injury Action.

79. Even if CIC obtains relief from the Default Judgments entered against Hunt in the Wrongful Death Action and the Personal Injury Action, CIC has no obligation to defend or indemnify Hunt, because the delay in provision of notice has materially impaired CIC's ability to investigate and defend the claims.

80. Defendant Hunt is seeking or likely will seek defense and indemnification for the Wrongful Death Action and the Personal Injury Action.

81. Upon information and belief, Owens will seek satisfaction from CIC under the Policies for the Default Judgment obtained in the Wrongful Death Action.

82. Jacobs has sought satisfaction from CIC under the Policies for the Default Judgment obtained in the Personal Injury Action, and CIC files this Action to seek a Declaration as to coverage obligations.

83. WSC has an interest in this action and must be included as a party, because WSC is the named insured under the Policies, which received delivery of same. Further, the outcome of this declaration is likely to impact WSC in the form of future premiums and insurability.

84.     This is an action for declaratory judgment brought pursuant to the Federal Uniform Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and the North Carolina Uniform Declaratory Judgment Act, N.C. Gen. Stat. § 1-253, et seq.  A justiciable controversy exists between the parties in which the parties have a legal and actual interest, and which is ripe for resolution.

85.     CIC's failure to receive timely notice of the Wrongful Death Action and the Personal Injury Action bars CIC from having any duty of defense or indemnity under the Policies, and CIC has no duty to pay the Default Judgments entered in the Wrongful Death Action or the Personal Injury Action.

86.     The amount of the Default Judgment in the Wrongful Death Action is $5,100,000, and the amount of the Default Judgment in the Personal Injury Action is $110,000; therefore, the amount in controversy in this case exceeds $75,000.

WHEREFORE, CIC respectfully prays for the following:

a)      That the Court determine the rights and obligations of CIC, Hunt, WSC, Owens, and Jacobs under the Policies and determine that CIC has no obligation to defend or indemnify Hunt with respect to the claims presented and the Default Judgment entered in the Wrongful Death Action and the Personal Injury Action;

b)      For a non-jury trial; and

b)      For such other and further relief as this Court deems fair and appropriate.

Respectfully submitted this 8th day of November, 2022,

*Signature Page to Follow*

WILKES ATKINSON & JOYNER, LLC

s/ C. Daniel Atkinson_____
C. Daniel Atkinson (N.C. Bar No. 34747)
datkinson@wajlawfirm.com
127 Dunbar Street, Suite 200
Spartanburg, SC 29306
Telephone: 864.591.1113
Facsimile: 864.591.1767

ATTORNEY FOR PLAINTIFF THE
CINCINNATI INSURANCE COMPANY