# THE CINCINNATI INSURANCE COMPANY

# EXCESS LIABILITY COVERAGE PART DECLARATIONS

Previous Policy Number
ENP0104045

Attached to and forming part of POLICY NUMBER: ENP 010 40 45    Effective Date: 10-01-2013

**NAMED INSURED** is the same as it appears in the Common Policy Declarations unless another entry is made here.

## LIMITS OF INSURANCE

| | |
|---|---|
| Each Occurrence Limit | $ 4,000,000 |
| Aggregate Limit | $ 4,000,000 |

**ADVANCE PREMIUM** $ 8,061
Applicable to Premium, if box is checked:
☐ Subject to Annual Adjustment
☐ Subject to Audit as follows:

| Premium Basis | Estimated Exposure | Each Unit of Exposure Rate Per: | Minimum Premium |
|---|---|---|---|
| | | | |

## SCHEDULE OF UNDERLYING INSURANCE

**Underlying Insurance, Carrier, Policy Number & Term:** | **Underlying Limits:**

a) COMMERCE & INDUSTRY INS    Employer's Liability
   WC051754685
   10-01-2012 TO 10-01-2013

Bodily Injury by Accident:
$    1,000,000    Each Accident
Bodily Injury by Disease:
$    1,000,000    Each Employee
Bodily Injury by Disease:
$    1,000,000    Policy Limit

b) CINCINNATI INS. CO.    Automobile Liability
   EBA 010 40 45           Including:
   10-01-2013 TO 10-01-2014
   ☐ Owned Autos
   ☐ Non-Owned Autos
   ☐ Hired Autos
   ☒ Any Auto

Bodily Injury Liability Limit:
$             Each Person
$             Each Accident
Property Damage Liability Limit:
$             Each Accident
             or
Bodily Injury Liability and / or Property Damage Liability or Both Combined Limit:
$    1,000,000    Each Accident

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:**
XS101UM    12/04    EXCESS LIABILITY - TABLE OF CONTENTS
XS304      12/04    POLLUTANT EXCLUSION
XS306      09/02    EMPLOYMENT - RELATED PRACTICES EXCLUSION
XS409NC    09/02    NORTH CAROLINA CHANGES

# EXCESS LIABILITY - TABLE OF CONTENTS

**Coverage Part Provision:**                                                     **Begins on Page:**

Preamble ......................................................................................................................................... 2
SECTION I - COVERAGE............................................................................................................... 2
    A. Insuring Agreement ............................................................................................................ 2
    B. Exclusions: ......................................................................................................................... 2
        1. Asbestos.......................................................................................................................... 2
        2. Distribution of Material in Violation of Statutes .............................................................. 3
        3. Electronic Data ................................................................................................................ 3
        4. Pollutant - Auto ................................................................................................................ 3
        5. Pollutant - Other Than Auto ............................................................................................ 4
        6. Underlying Insurance ...................................................................................................... 5
        7. Uninsured or Underinsured Motorists ............................................................................ 5
        8. War ................................................................................................................................... 5
    C. Defense and Supplementary Payments ............................................................................ 5
SECTION II - LIMITS OF INSURANCE........................................................................................... 6
SECTION III - CONDITIONS: .......................................................................................................... 7
        1. Appeals............................................................................................................................ 7
        2. Audit ................................................................................................................................ 7
        3. Bankruptcy ...................................................................................................................... 7
        4. Duties in the Event of Occurrence, Claim or Suit .......................................................... 7
        5. First Named Insured ....................................................................................................... 7
        6. Liberalization ................................................................................................................... 7
        7. Loss Payments................................................................................................................ 8
        8. Maintenance of Underlying Insurance ........................................................................... 8
        9. Other Insurance .............................................................................................................. 8
        10. Premium .......................................................................................................................... 8
        11. Representations .............................................................................................................. 8
        12. Transfer of Rights of Recovery Against Others to Us ................................................... 8
        13. When We Do Not Renew................................................................................................. 9
SECTION IV - DEFINITIONS:.......................................................................................................... 9
        1. "Authorized representative"............................................................................................ 9
        2. "Coverage term".............................................................................................................. 9
        3. "Electronic data".............................................................................................................. 9
        4. "Hostile fire"..................................................................................................................... 9
        5. "Insured" .......................................................................................................................... 9
        6. "Loss" ............................................................................................................................. 10
        7. "Pollutants" ................................................................................................................... 10
        8. "Underlying insurance" ................................................................................................. 10
**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT** ............................................. 11

XS 101 UM 12 04                      Includes copyrighted material of Insurance Services Office, Inc. with its permission.            Page 1 of 12

Case 7:22-cv-00189-M-RJ    Document 1-6    Filed 11/08/22    Page 2 of 16

# EXCESS LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties, and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION IV - DEFINITIONS**.

## SECTION I - COVERAGE

**A. Insuring Agreement**

1. We will pay those sums the "insured" is legally obligated to pay as damages for that part of "loss" to which this insurance applies in excess of "underlying insurance".

2. This insurance applies to injury or offense only if:

   a. The injury or offense takes place during the policy period shown in the Declarations; and

   b. Prior to the "coverage term" in which the injury or offense takes place, you did not know, per Paragraph **4.** below, that the injury or offense had taken place or begun to take place, in whole or in part.

3. Injury or offense which:

   a. Takes place during the "coverage term"; and

   b. Was not, prior to the "coverage term", known by you, per Paragraph **4.** below, to have taken place;

   includes any continuation, change or resumption of that injury or offense after the end of the "coverage term" in which it first became known by you.

4. You will be deemed to know that injury or offense has taken place at the earliest time when any "authorized representative":

   a. Reports all, or any part of the injury or offense to us or any other insurer;

   b. Receives a written or verbal demand or claim for damages because of the injury or offense;

   c. First observes, or reasonably should have first observed, the injury or offense;

   d. Becomes aware, or reasonably should have become aware, by any means, other than as described in **c.** above, that injury or offense has taken place or begun to take place; or

   e. Becomes aware, or reasonably should have become aware, of a condition from which injury or offense is substantially certain to take place.

5. The terms, definitions, conditions, limitations and exclusions of the "underlying insurance" are made a part of this Coverage Part, except for:

   a. Any term or condition relating to:

      (1) Any duty to investigate or defend;

      (2) The limits of insurance;

      (3) The payment of expenses;

      (4) The premium;

      (5) Cancellation or non-renewal;

      (6) Any renewal agreement;

      (7) The policy period; or

   b. Any other provision that is not consistent with this Coverage Part;

   in which case the terms, definitions, conditions, limitations and exclusions of this Coverage Part will apply.

6. The amount we will pay is limited as described in **SECTION II - LIMITS OF INSURANCE**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SECTION I - COVERAGE, C. Defense and Supplementary Payments**.

**B. Exclusions**

This insurance does not apply to:

1. **Asbestos**

   Any liability arising out of, attributable to or any way related to asbestos in any form or transmitted in any manner.

2. **Distribution of Material in Violation of Statutes**

   Any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

   a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

   b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

   c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

3. **Electronic Data**

   Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

4. **Pollutant - Auto**

   Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

   a. That are, or that are contained in any property that is:

      (1) Being transported or towed by, handled, or handled for movement into, onto or from, an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion;

      (2) Otherwise in the course of transit by or on behalf of the "insured"; or

      (3) Being stored, disposed of, treated or processed in or upon an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion;

   b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion; or

   c. After the "pollutants" or any property in which the "pollutants" are contained are moved from an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion to the place where they are finally delivered, disposed of or abandoned by the "insured".

   Paragraph **a.** above does not apply to bodily injury or property damage arising from fuels, lubricants, or other operating fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion or its parts, if:

   (1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an auto part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   (2) The bodily injury or property damage does not arise out of the operation of:

      (a) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; or

      (b) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment.

   However, this exception to Paragraph **(a)** does not apply if the fuels, lubricants, or other operating fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed, emitted or released.

   Paragraphs **b.** and **c.** above do not apply to an occurrence that occurs away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion if:

XS 101 UM 12 04  
Includes copyrighted material of Insurance Services Office, Inc. with its permission.  
Page 3 of 12

Case 7:22-cv-00189-M-RJ   Document 1-6   Filed 11/08/22   Page 4 of 16

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion; and

(2) The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

5. **Pollutant - Other Than Auto**

   a. Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

   (1) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured".

   However, Paragraph **a.(1)** of this exclusion does not apply to the following if such liability is covered by "underlying insurance" listed in the Schedule of Underlying Insurance, and subject to all its terms, limitations and conditions:

   (a) Bodily injury, if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests;

   (b) Bodily injury or property damage for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to your "underlying insurance" as an additional "insured" with respect to your ongoing operations performed for that additional "insured" at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured", other than that additional "insured"; or

   (c) Bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire";

   (2) At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

   (3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "insured" or any person or organization for whom you may be legally responsible;

   (4) At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations, if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor.

   However, Paragraph **a.(4)** of this exclusion does not apply to the following if such liability is covered by "underlying insurance" listed in the Schedule of Underlying Insurance, and subject to all its terms, limitations and conditions:

   (a) Bodily injury or property damage arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of mobile equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the bodily injury or property damage arises out

XS 101 UM 12 04     Includes copyrighted material of Insurance Services Office, Inc. with its permission.     Page 4 of 12

Case 7:22-cv-00189-M-RJ    Document 1-6    Filed 11/08/22    Page 5 of 16

of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor;

**(b)** Bodily injury or property damage sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(c)** Bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire"; or

**(5)** At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations, if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants".

**b.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph **b.** does not apply to liability for damages because of property damage that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or suit by or on behalf of a governmental authority.

**6. Underlying Insurance**

Any liability not covered by "underlying insurance" for any reason other than the exhaustion of an aggregate limit of insurance by payment of claims.

**7. Uninsured or Underinsured Motorists**

Any liability or obligation to any "insured" or anyone else under any uninsured motorist, underinsured motorist, automobile no-fault or first party personal injury law.

**8. War**

Any liability, however caused, arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack by any government, sovereign or authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**C. Defense and Supplementary Payments**

**1.** We will have the right and duty to defend the "insured" against any suit seeking damages because of injury or damage to which this insurance applies when the applicable limits of "underlying insurance" and any other insurance have been exhausted by payment of claims. We will have no duty to defend the "insured" against any suit seeking damages for injury or damage to which this insurance does not apply. We may, at our discretion, investigate any occurrence and settle any claim or suit that may result.

Our right and duty to defend ends when the applicable Limits of Insurance, as stated in the Declarations, has been exhausted by payment of claims.

**2.** We have no duty to investigate, settle or defend any claim or suit other than those

XS 101 UM 12 04     Includes copyrighted material of Insurance Services Office, Inc. with its permission.     Page 5 of 12

Case 7:22-cv-00189-M-RJ  Document 1-6  Filed 11/08/22  Page 6 of 16

circumstances described in Paragraph **C.1.** However, we do have the right to participate in the investigation, settlement or defense of any claim or suit to which this insurance applies. If we exercise this right, we will do so at our expense.

3. If there is no underlying insurer or other insurance obligated to do so, we will pay the following when we provide a defense:

    a. All expenses we incur.

    b. The cost of bail bonds up to $3,000. We do not have to furnish these bonds.

    c. The cost of bonds to appeal a judgment or award in any claim or suit we defend and the cost of bonds to release attachments, but only for bond amounts within the applicable Limits of Insurance. We do not have to furnish these bonds.

    d. Reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the claim or suit, including the actual loss of earnings.

    e. All costs taxed against the "insured" in the suit.

4. If there is no underlying insurer obligated to do so, we will pay the following expenses for a "loss" to which this insurance applies:

    a. Prejudgment interest awarded against the "insured" on that part of the judgment we become obligated to pay and which falls within the applicable Limit of Insurance. If we make an offer to pay the applicable Limits of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    b. All interest awarded against the "insured" on the full amount of any judgment that accrues:

        (1) After entry of the judgment; and

        (2) Before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

5. If we are prevented by law or otherwise from carrying out any of the provisions of **SECTION I - COVERAGE, C. Defense and Supplementary Payments**, we will pay any expense incurred with our written consent.

These payments will not reduce the Limits of Insurance provided by this Coverage Part when defense or supplementary payments provided by the "underlying insurance" do not reduce their Limits of Insurance. However, when defense or supplementary payments provided by the "underlying insurance" reduce their Limits of Insurance then such expense payments paid by us will reduce the Limits of Insurance provided by this Coverage Part.

**SECTION II - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a. "Insureds";

    b. Claims made or suits brought;

    c. Persons or organizations making claims or bringing suits; or

    d. Coverages provided under this Coverage Part.

2. The Limits of Insurance of this Coverage Part apply in excess of the "underlying insurance" limits specified in the Schedule of Underlying Insurance.

3. The Aggregate Limit specified in the Declarations is the most we will pay for "loss" to which this insurance applies. The Aggregate Limit of this Coverage Part applies to "loss" in the same manner as the aggregate limit in the "underlying insurance" applies to "loss". When the "underlying insurance" does not apply an aggregate limit of "loss", the Aggregate Limit of this Coverage Part will not apply to "loss". When the "underlying insurance" does apply an aggregate limit to "loss", the Aggregate Limit of this Coverage Part will apply to "loss".

4. Subject to **3.** above, the Each Occurrence Limit specified in the Declarations is the most we will pay for "loss" arising out of any one occurrence.

    We will not pay more than the Limit of Insurance shown in this Coverage Part's Declarations for Each Occurrence because any Personal Umbrella Liability Policy(ies) is / are attached to this policy.

5. The following provision applies only if this Coverage Part contains an Aggregate Limit of Insurance which applies to the "loss".

    If the Each Occurrence Limit of Insurance of the "underlying insurance" is less than as stated in the Schedule of Underlying Insurance because the aggregate limits of the "underlying insurance" have been reduced, this Coverage Part becomes excess of such re-

XS 101 UM 12 04

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 6 of 12

Case 7:22-cv-00189-M-RJ   Document 1-6   Filed 11/08/22   Page 7 of 16

duced limit of insurance if such reduction is solely the result of injury or damage occurring after the inception date of this Coverage Part and not before. This provision does not increase the Limits of Insurance of this Coverage Part.

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

## SECTION III - CONDITIONS

1. **Appeals**

   We may elect to appeal a judgment against any "insured" if the judgment exceeds the underlying limits of insurance. If we appeal, we will do so at our own expense, but in no event shall this provision increase our liability beyond:

   a. Our applicable Limits of Insurance as shown in the Declarations;

   b. Our applicable Defense and Supplementary Payments as described in **SECTION I - COVERAGE, C. Defense and Supplementary Payments**; and

   c. The expense of such appeal.

2. **Audit**

   If this Coverage Part is subject to Audit, as indicated in the Declarations, then the following Condition applies:

   a. The premium shown in the Declarations as Advance Premium is a deposit premium. At the close of each audit period, we will compute the earned premium for that period. If:

      (1) The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

      (2) The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us. The due date for audit and retrospective premiums is the date shown as the due date on the bill.

      However, in no event will the earned premium be less than the Minimum Premium stated in the Declarations.

   b. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

3. **Bankruptcy**

   Bankruptcy or insolvency of the "insured" or the "insured's" estate shall not relieve us of any obligations under this Coverage Part.

4. **Duties in the Event of Occurrence, Claim or Suit**

   a. You must see to it that we and your underlying insurers are notified as soon as practicable of any occurrence which may result in a claim if the claim may involve this Coverage Part or any "underlying insurance". Notice should include:

      (1) How, when and where the occurrence took place;

      (2) The names and addresses of injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the occurrence.

   b. If a claim is made or suit is brought against any "insured" that is likely to involve this Coverage Part or any "underlying insurance", you must notify us and your underlying insurers as soon as practicable.

   c. You must see to it that we and your underlying insurers:

      (1) Are assisted, upon our request, in the enforcement of any right against any person or organization which may be liable to any "insured" because of injury or damage to which this insurance may apply; and

      (2) Receive the "insured's" cooperation in the investigation, settlement or defense of the claim or suit.

   d. No "insured", except at their own expense, will voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent.

5. **First Named Insured**

   The person or organization first named in the Declarations will act on behalf of all other "insureds" where indicated in this Coverage Part.

6. **Liberalization**

   If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this

XS 101 UM 12 04      Includes copyrighted material of Insurance Services Office, Inc. with its permission.      Page 7 of 12

Case 7:22-cv-00189-M-RJ    Document 1-6    Filed 11/08/22    Page 8 of 16

Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

a. The date we implemented the change in your state; or

b. The date this Coverage Part became effective; and

Will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

7. **Loss Payments**

    Coverage under this Coverage Part will only apply after you and your underlying insurers are obligated to pay the full amount of the "underlying insurance" limits of insurance. When the amount of the "loss" has finally been determined, we will promptly pay on your behalf the amount of "loss" covered under the terms and conditions of this Coverage Part after the full amount of "underlying insurance" has been paid.

8. **Maintenance of Underlying Insurance**

    While this Coverage Part is in effect, you shall maintain in full force "underlying insurance". This means:

    a. The terms, conditions and endorsements of "underlying insurance" will not materially change;

    b. Renewals or replacements of "underlying insurance" will not be more restrictive in coverage;

    c. "Underlying insurance" may not be canceled or nonrenewed without notifying us; and

    d. Limits of "underlying insurance" will not be reduced, except for any reduction or exhaustion in the aggregate limits due to payment of "loss" for injury or offense that takes place during the corresponding "coverage term" of this Coverage Part.

    The limits of "underlying insurance" shall be deemed applicable, regardless of any defense which the insurer who provides the "underlying insurance" may assert because of the "insured's" failure to comply with any Condition of the policy or the inability of the insurer to pay by reason of bankruptcy or insolvency.

    Failure to comply with this condition will not invalidate this Coverage Part, but in the event of such failure, we will only be liable to the same extent as if there had been compliance with this condition.

    You must see to it that we are notified promptly if any "underlying insurance" is canceled or not renewed.

9. **Other Insurance**

    This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

10. **Premium**

    The premium for this Coverage Part shall be as stated in the Declarations. The advance and anniversary premiums are not subject to adjustment, except as stated in the Declarations, or as stated in an endorsement issued by us to form a part of this Coverage Part.

    You shall maintain records of such information as is necessary for premium computation, and shall, if requested by us, send copies of such records to us at the end of the "coverage term" and at such times during the policy period as we may direct.

    Any change in the premium for "underlying insurance" shall be promptly reported to us. We may adjust the premium in accordance with our rules and rates.

11. **Representations**

    a. By acceptance of this Coverage Part, you agree that the statements in the Declarations are your agreements and representations, that this Coverage Part is issued in reliance upon the truth of such representations and that this Coverage Part embodies all agreements existing between you and us or any of our agents relating to this insurance.

    b. However, to the extent that the following applies in the "underlying insurance", it will also apply to this Coverage Part:

        Based on our dependence upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of this Coverage Part, we will not reject coverage under this Coverage Part based solely on such failure.

12. **Transfer of Rights of Recovery Against Others to Us**

    a. If the "insured" has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring suit or

XS 101 UM 12 04     Includes copyrighted material of Insurance Services Office, Inc. with its permission.     Page 8 of 12

Case 7:22-cv-00189-M-RJ    Document 1-6    Filed 11/08/22    Page 9 of 16

transfer those rights to us and help us enforce them.

b. Any recoveries shall be applied as follows:

(1) First, we will reimburse anyone, including the "insured", the amounts actually paid by them that were in excess of our payments;

(2) Next, we will be reimbursed to the extent of our actual payment; and

(3) Lastly, any amounts left after meeting the obligations outlined in **(1)** and **(2)** above will be distributed to anyone else known to us at the time a recovery is made and who is legally entitled to such recovery.

Expenses incurred in the recovery shall be apportioned among all interests in the ratio of their respective recoveries as finally settled. If there is no recovery as a result of our attempts, we shall bear all of the recovery expenses.

c. If prior to injury or damage taking place to which this Coverage Part would apply, you and the issuer of your applicable "underlying insurance" waive any right of recovery against a person or organization for injury or damage, we will also waive any rights we may have against such person or organization.

**13. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION IV - DEFINITIONS**

1. "Authorized representative" means:

   a. If you are:

      (1) An individual, you and your spouse are "authorized representatives".

      (2) A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

      (3) A limited liability company, your members and your managers are "authorized representatives".

      (4) An organization other than a partnership, joint venture or limited liability company, your executive officers and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

      (5) A trust, your trustees are "authorized representatives".

   b. Your employees assigned to manage your insurance program, or assigned to give or receive notice of an occurrence, offense, claim or suit are also "authorized representatives".

2. "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

   a. The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

      (1) The day the policy period shown in the Declarations ends; or

      (2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

   b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

3. "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

4. "Hostile fire" means one that becomes uncontrollable or breaks out from where it was intended to be.

5. "Insured" means the Named Insured shown in the Declarations and any person or organization qualifying as such in the "underlying insurance".

XS 101 UM 12 04     Includes copyrighted material of Insurance Services Office, Inc. with its permission.     Page 9 of 12

Case 7:22-cv-00189-M-RJ   Document 1-6   Filed 11/08/22   Page 10 of 16

6. "Loss" means those sums paid as damages in the settlement or satisfaction of a claim to which this insurance applies for which the "insured" is legally liable, after making deductions for all recoveries, salvages and other insurance, whether collectible or not, other than the "underlying insurance" and excess insurance written specifically to be excess over this insurance. "Loss" does not include investigation, adjustment, defense or appeal costs and expenses, even though "underlying insurance" may provide insurance for such costs and expenses.

7. "Pollutants" mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants include, but are not limited to, substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

   a. The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

   b. The insured uses, generates or produces the "pollutant".

8. "Underlying insurance" means the policy(ies) and limits of insurance shown in the Schedule of Underlying Insurance, including any renewal or replacement of such policy(ies), which provide the layer of coverage, whether primary or excess, immediately preceding the layer of coverage provided by this Coverage Part.

XS 101 UM 12 04  
Includes copyrighted material of Insurance Services Office, Inc. with its permission.  
Page 10 of 12

Case 7:22-cv-00189-M-RJ   Document 1-6   Filed 11/08/22   Page 11 of 16

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**EXCESS LIABILITY COVERAGE PART**

A. **SECTION I - COVERAGE, B. Exclusions** is modified to add the following:

This insurance does not apply to:

1. Any liability:

   a. With respect to which an "insured" under the Coverage Part is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   b. Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(1)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(2)** the "insured" is, or had this Coverage Part not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Any liability resulting from the "hazardous properties" of "nuclear material", if

   a. The "nuclear material" **(1)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(2)** has been discharged or dispersed therefrom,

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

   c. The injury or damage arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **c.** applies only to property damage to such "nuclear facility" and any property thereat.

B. **SECTION IV - DEFINITIONS** is hereby modified to add the following definitions:

1. "Hazardous properties" include radioactive, toxic or explosive properties;

2. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

3. "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

4. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

5. "Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

6. "Nuclear facility" means:

   a. Any "nuclear reactor";

   b. Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", **(3)** or handling, processing or packaging "waste";

   c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear materials", if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233

XS 101 UM 12 04    Includes copyrighted material of Insurance Services Office, Inc. with its permission.    Page 11 of 12

Case 7:22-cv-00189-M-RJ   Document 1-6   Filed 11/08/22   Page 12 of 16

or any combination thereof, or more than 250 grams of uranium 235;

   **d.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

7. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

8. "Property damage" includes all forms of radioactive contamination of property.

XS 101 UM 12 04

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 12 of 12

Case 7:22-cv-00189-M-RJ   Document 1-6   Filed 11/08/22   Page 13 of 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLLUTANT EXCLUSION

This endorsement modifies insurance provided under the following:

**EXCESS LIABILITY COVERAGE PART**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**

**SECTION I - COVERAGE, B. Exclusions** is modified as follows:

Exclusion **5. Pollutant - Other Than Auto** is hereby deleted and replaced by the following:

5.  **Pollutant - Other Than Auto**

    This insurance does not apply to:

    a.  Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

        (1) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured".

        (2) At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

        (3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "insured" or any person or organization for whom you may be legally responsible; or

        (4) At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured contractor or subcontractor.

        Subparagraphs **a.(1)** and **a.(4)** do not apply:

        (a) To bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire"; or

        (b) If insurance is provided to the "insured" by "underlying insurance" specifically listed in the Schedule of Underlying Insurance at the underlying limit scheduled, but only to the extent bodily injury or property damage coverage is provided by that "underlying insurance" specifically listed in the Schedule of Underlying Insurance and subject to all its terms and conditions.

        (5) At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants".

    b.  Any "loss", cost or expense arising out of any:

        (1) Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

        (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

        However, this paragraph does not apply to liability for damages because of property damage that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or suit by or on behalf of a governmental authority.

XS 304 12 04

Case 7:22-cv-00189-M-RJ   Document 1-6   Filed 11/08/22   Page 14 of 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT - RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following

**EXCESS LIABILITY COVERAGE PART**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**

**SECTION I - COVERAGE, B. Exclusions** is modified to add the following:

This insurance does not apply to any liability to:

a.  A person arising out of any:

   **(1)** Refusal to employ that person;

   **(2)** Termination of that person's employment; or

   **(3)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

b.  The spouse, child, parent, brother or sister of that person as a consequence of any of the employment-related practices described in Paragraphs **(1)**, **(2)**, or **(3)** above directed at that person.

This exclusion applies:

a.  Whether the insured may be liable as an employer or in any other capacity; and

b.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

XS 306 09 02

**THE ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA CHANGES

This endorsement modifies insurance provided under the following:

**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE PART**

I. **DEFENSE AND SUPPLEMENTARY PAYMENTS**

When defense and supplementary payments provided by the "underlying insurance" reduces your Limits of Insurance then such payment paid by us will reduce the Limits of Insurance provided by this Coverage Part.

II. **SECTION III - CONDITIONS** is amended as follows:

Condition **11. Representations** is amended to include the following:

Knowledge by an agent of the Company of any fact which breaches a condition of the Coverage Part shall be knowledge of the Company if such fact is known to the agent at the time the Coverage Part is issued or an application made or thereafter becomes known to the agent in the course of his dealings as an agent with the Named Insured. Any fact which breaches a condition of the Coverage Part and is known to the agent prior to an injury, offense or incident, to which this insurance applies, taking place shall not void the Coverage Part or defeat a recovery thereon in the event of "loss".

XS 409 NC 09 02